IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:06-CR-69-1FL2

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) **MEMORANDUM & RECOMMENDATION** |
| | ) |
| THOMAS LAUREN PFOFF, | ) |
| Defendant. | ) |

This matter is before the court on Defendant Thomas Lauren Pfoff's Motion to Suppress. [DE-63]. The government has responded, [DE-66], and the court held an evidentiary hearing on October 10, 2007, to develop the record. At the October 10, 2007 hearing, the court heard testimony from Scott Branning, a lieutenant with the Shallotte Police Department who questioned Defendant after his arrest. Defendant elected not to testify or offer any evidence other than argument. Accordingly, this matter is ripe for review.

## STATEMENT OF THE FACTS

On October 26, 2005, a masked person wearing a black jacket with white stripes went into the Advanced Auto Parts Store in Shallotte, North Carolina, wielding a gun. The perpetrator stole approximately $2,400 in cash and several checks made out to the store. There had been a spate of robberies in the area in the past month and the store manager knew that Advanced Auto Parts Stores were being targeted. As a result, the manager stationed himself across from the store on October 26, 2005, in anticipation of a robbery.

1

When the perpetrator walked into the store wearing a ski mask, the manager immediately called 911. The manager gave the dispatcher a description of the perpetrator's clothing and the events, as they were unfolding in the store. The manager saw the perpetrator flee the store and saw a white pickup truck leave the scene. The manager then got into his car and followed the white pickup truck.

The dispatcher contacted the police, who responded to the call and followed the white pickup truck. An officer pulled next to the truck and saw a white female driving the truck. She failed to yield for approximately half of a mile. She then pulled over. The police approached the pickup truck and saw a man lying on the floorboard, and then saw his head pop up. The police asked the man to exit the vehicle and lie on the ground with his arms outstretched. That man was later identified as Defendant. Defendant complied with the officer's requests. He was taken into custody and placed in a police car.

Approximately five minutes after Defendant was placed in the police car, Lieutenant Branning arrived on the scene. He testified that he talked to the officers to get information about the events leading up to Defendant's arrest. Then Lieutenant Branning went over to Defendant and asked him if his handcuffs were too tight. Defendant responded that they were all right. Lieutenant Branning testified that he read Defendant his <u>Miranda</u> rights and that Defendant said he understood his rights. In addition, Lieutenant Branning stated that there was nothing in Defendant's demeanor or conduct to indicate that Defendant did not understand the questions or his rights. Lieutenant Branning asked Defendant what was going on and Defendant said that he had robbed a store. Lieutenant Branning then asked Defendant to tell him about the gun and Defendant stated that he wanted to talk to an attorney. At that point, Lieutenant Branning stopped questioning Defendant.

Lieutenant Branning further testified that he talked to Defendant for a very short period of time, approximately one minute, that Defendant's demeanor was polite, and that he did not seem to be "fried" from drug or alcohol abuse because he was not slurring his words, he understood the questions posed to him and had followed the verbal commands of the officers when he was first arrested. Lieutenant Branning admitted that he did not know whether Defendant had asked for a lawyer when he was initially pulled over, although he felt convinced that Defendant did not ask for a lawyer because the officers would have told him had Defendant requested a lawyer. In addition, Lieutenant Branning stated that he did not see Defendant walk or drive, did not perform a field sobriety test on Defendant, did not ask Defendant whether he was under the influence, and talked with Defendant for a very short period of time.

Defendant was brought to the police station to be processed. The police found money, checks from Advanced Auto Parts, a Ruger 9 millimeter gun, white gloves, a ski mask and a blue jacket with stripes in the white pickup truck.

On August 23, 2006, a grand jury issued a seven-count indictment against Defendant. [DE-1]. A superseding indictment was issued against Defendant on July 11, 2007, charging him with various robbery and firearm related offenses. [DE-54].

## DISCUSSION

Defendant is charged with one count of conspiracy to obstruct, delay and affect commerce by robbery in violation of 18 U.S.C. § 1591; two counts of interference with commerce by robbery in violation of 18 U.S.C. § 1591; two counts of possession of a firearm in furtherance of a crime in violation of 18 U.S.C. § 924(c); and two counts of possession of a firearm by a felon during a period of time beginning on or about September

25, 2005 and continuing until on or about October 26, 2005, in violation of 18 U.S.C. §§ 922(g)(1), 924 and 922(k). In his Motion to Suppress, Defendant claims that he did not knowingly or voluntarily waive his Miranda rights because he was under the influence of cocaine and other drugs and his faculties were severely impaired. Further, he argues that his confession also was not voluntarily or knowingly given. In addition, at the hearing, defense counsel argued that there was not enough evidence presented to establish whether Defendant voluntarily confessed because it was possible that he had requested to speak to a lawyer when he was initially detained but none of the police officers who first pulled Defendant over were at the hearing to testify about any statements Defendant may have made when first arrested. For the following reasons, those arguments should be rejected.[1]

### A. Knowing and Voluntary Waiver of Miranda Rights

Defendant argues that he did not knowingly and voluntarily waive his Miranda rights because he was under the influence of drugs. The court is unpersuaded.

In order for a defendant's waiver of Miranda rights to be knowingly given, it must "have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). In addition, it must be "the product of free and deliberate choice rather than intimidation, coercion, or deception." Id. The mere fact that a defendant is under the

---

[1] The government argues that the court should dismiss Defendant's Motion to Suppress as untimely. Although defense counsel filed the Motion to Suppress after the expiration of the pretrial motions deadline, the court concludes that for good cause, it will consider Defendant's motion on the merits. See Fed. R. Crim. P. 12(e) (providing that "for good cause, the court may grant relief from the waiver" of a defense that was not raised by the applicable deadline imposed by the court).

4

influence of drugs or alcohol does not render a waiver of rights unknowing. See United States v. Cristobal, 293 F.3d 134, 142 (4th Cir. 2002) (affirming the district court's finding that a defendant's waiver of his Miranda rights and subsequent confession was knowing and voluntary even though he was under the influence of painkillers and narcotics). When there is no evidence in the record to indicate that the defendant was incapacitated because of drugs or alcohol such that he could not comprehend the nature of the rights being abandoned and the consequences of doing so, then suppression is not warranted.

Here, other than Defendant's own allegations in his Motion to Suppress, there is no evidence that Defendant had used or was incapacitated by drugs or alcohol, or much less that he did not understand his rights and the consequences of waiving them. According to Lieutenant Branning's testimony, Defendant cooperated with police when the pickup truck was pulled over, he got into the police car without a problem, and before Lieutenant Branning read Defendant his Miranda rights, he asked Defendant whether his handcuffs were too tight to which Defendant responded that they were all right. Further, Lieutenant Branning read Defendant his rights, and he responded that he understood them. As a result, the evidence does not show that Defendant was so incapacitated by drug use that his waiver was unknowing.

More importantly, it is clear that Defendant knew and understood his rights because he asserted them. Cf. Burbine, 475 U.S. at 421-22 (noting that when a defendant understands the full panoply of Miranda rights and the potential consequences of relinquishing them, then a waiver of those rights is knowingly made). Defendant talked to Lieutenant Branning for about a minute before asking for a lawyer, at which point the questioning stopped. In order to request an attorney, a defendant must comprehend that

5

he has the right to an attorney's assistance. Accordingly, the totality of the circumstances suggest that Defendant was alert and coherent, that he knew and understood his rights, and that he knowingly waived them.

In addition, a defendant's waiver must be voluntary. The relevant inquiry is "whether the defendant's will has been overborne or his capacity for self-determination critically impaired." United States v. Pelton, 835 F.2d 1067, 1071 (4th Cir. 1987) (internal quotations omitted). Further, "coercive police activity is . . . a necessary predicate to a finding that a waiver of Miranda rights is not voluntary." Cristobal, 293 F.3d at 141. In Defendant's case, there is no evidence of coercive police activity. Lieutenant Branning stated that when the officers first pulled over the truck in which Defendant was riding and asked him to leave the vehicle, their weapons were drawn, which is routine procedure when an individual is suspected of armed robbery. However, once Defendant exited the vehicle and the officers had the situation under control, they did not brandish their weapons. Defendant has failed to allege any police conduct that could be considered oppressive or coercive. Accordingly, it is the court's opinion that Defendant's waiver of his rights was voluntary as well as knowing.

Defense counsel asserted at the hearing that it does not make sense that Defendant waived his Miranda rights, and then confessed to the crime, but when asked about the gun requested a lawyer. Defense counsel suggested that Defendant might have asked for counsel before the confession, when the other officers were arresting him. However, defense counsel provided no evidence that Defendant had previously asked for a lawyer. Lieutenant Branning testified that, although he did not ask the officers specifically, when he talked to the arresting officers, they did not tell him that Defendant asked for a lawyer,

6

Case 7:06-cr-00069-FL   Document 72   Filed 10/29/07   Page 6 of 9

which is information that they would have relayed to him because it is so important when questioning a defendant. The evidence indicates that the first time Defendant requested a lawyer was while he was being questioned by Lieutenant Branning. Accordingly, it is the court's opinion that Defendant's Miranda waiver was knowingly and intelligently made.

### B. Voluntary Confession

In addition, Defendant argues that his confession, in which he admitted that he committed the robbery, after he waived his Miranda rights, was involuntary under the Fifth Amendment. The Fifth amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . without due process of law." U.S. Const. amend. V. It is the court's opinion that this argument, too, must fail.

The same Fifth Amendment analysis applies to an inquiry into the voluntariness of a confession as applied to the voluntary element of a Miranda rights waiver. As discussed above in the context of a Miranda waiver, coercive police activity is a necessary condition before a court will deem a confession involuntary. See Colorado v. Connelly, 479 U.S. 157, 167 (1986) (holding that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause). More specifically, a confession is involuntary if it "was extracted by any sort of threats or violence, or obtained by any direct or implied promises, however slight, or by the exertion of any improper influence." Hutto v. Ross, 429 U.S. 28, 30 (1976) (internal quotations omitted).

As previously discussed, Defendant has failed to allege any facts to suggest that he was subjected to coercive police activity. At most, the police drew their weapons when they initially told Defendant to get out of the pickup truck. However, Defendant has made

no allegations that the police used threats, violence, promises or improper influences when arresting him, nor does the record reflect that any such conduct occurred. Moreover, the fact that Defendant may have been under the influence of drugs does not make his confession involuntary. See Cristobal, 293 F.3d at 143 (concluding that a defendant's confession was voluntary even though he was on painkillers and narcotics because he wasn't slurring his speech and his answers were lucid, among other reasons). There is no indication from the evidence that Defendant was so affected by drug use that his statements were not the produce of a free and rational choice. Cf. Mincey v. Arizona, 437 U.S. 385, 399-402 (1978) (holding that a confession by a defendant who was barely conscious and depressed almost to the point of a coma, who requested a lawyer on numerous occasions, and who said he was confused and unable to think, was not voluntarily given because his will was "simply overborne"). Accordingly, it is the court's opinion that Defendant's confession was voluntarily made.

## CONCLUSION

For the reasons set forth above, the court **RECOMMENDS** that Defendant's Motion to Suppress be **DENIED**. The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days from the date of receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the

District Court.

This 29th day of October 2007.

DAVID W. DANIEL
United States Magistrate Judge